CASE No. 1079.

KENNEDY v. REAMES.

1. *Quere:* Can a laborer who contracts for a share of the crop as payment for his services, execute a valid agricultural lien upon the crop which is to be made by his labor?

2. Where the relation of landlord and tenant of a farm exists, the former has a preferred statutory lien upon the crops made thereon by the latter, to the extent of one-third of such crops. 16 *Stat.* 411, § 5.

3. This agricultural lien act being a new law, the courts cannot, for its violation, go beyond the remedy afforded by it, or enforce any other remedy.

4. A creditor of one who had given a lien upon his crop, received in good faith a part of such crop and applied it to payment of his demand. *Held,* that the creditor was not liable to the lienee for conversion of this crop, or for its value in money.

Before THOMSON, J., Sumter, February, 1881.

Action commenced in the Court of Common Pleas, January 2d, 1879, by William G. Kennedy against Frederick L. Reames and Washington Miller. Miller was living upon the land on which the crop in dispute was made. Reames owned the land, but did not reside upon it. The opinion states the case.

*Mr. Joseph H. Earle,* for appellant.

*Messrs. Haynsworth & Cooper,* contra.

September 14th, 1881. The opinion of the court was delivered by

McGOWAN, A. J. About January 1st, 1878, Washington Miller agreed with his co-defendant, Frederick L. Reames, to cultivate a certain farm belonging to the said Reames, (who was also to furnish the stock), and to receive for his labor *one-third of the crop to be produced upon the place,* subject, however, to the payment of any claim Reames might have against Miller for money or supplies which might be advanced to him during the year. This agreement was verbal, but under it Miller went into possession of the farm. He got some supplies from Reames, and, desiring more, April 9th, 1878, gave to the plaintiff, Kennedy, a lien under the act of March 4th, 1878, (16 *Stat.* 411), purporting to be on all the crop to be made on the farm that year, and also a mortgage of " four shoats," to secure an advance for agricultural purposes to be made by the said plaintiff. The " shoats " were stolen and do not enter into the case. The instrument given to the plaintiff was registered, and an advance to the extent of $40 made.

There was made upon the place that year five bales of cotton and a small amount of corn. The cotton, at different times in the autumn of the year, was received by Reames and the proceeds retained, but did not satisfy his share of two-thirds and advances. The corn was divided, and one-third, forty or fifty bushels, was left in the hands of Miller, who afterwards disposed of it. In December the plaintiff took out under the act an agri-

cultural warrant against Miller. When the sheriff, with the warrant, went on the place the cotton was not there, and the defendant, Reames, claimed the corn also to satisfy the balance of his claim for advances. The sheriff did not seize the corn,. saying "he had no instruction to take it." He did seize some small articles of inconsiderable value, from which nothing was realized. The plaintiff then brought this action in the Court of Common Pleas against both Reames and Miller, praying that the five bales of cotton which Reames got be produced to satisfy his debt, or that the money arising from the sale should be paid into court. The case was heard by Judge Thomson, who ordered the complaint to be so amended as to be a simple action for money, and that being done, he gave judgment for $40 and interest for the plaintiff, against the defendant, Reames, who appeals to this court upon the following exceptions :

"1. Because Washington Miller was an employee of the defendant, Reames, and not a 'cultivator of the soil' in the sense of the act of 1878.

"2. Because, under the agreement between the defendant, Reames, and Miller, he (Miller) had no title to any part of the produce or crop until the same had been divided and his portion delivered to him by Reames.

"3. Because Miller did not own such an interest in the crop as was subject to an agricultural lien.

"4. Because the defendant, Reames, had no actual notice of the plaintiff's lien, and having sold the cotton before notice was given him of such lien, and before any demand was made upon him for said cotton, he is not liable for conversion.

"5. Because the remedy of the plaintiff, if any, was an action in rem.

"6. Because the plaintiff was bound to exhaust the crop which he found in defendant, Miller's, possession before proceeding against defendant, Reames."

In the view which the court takes it will not be necessary to consider exceptions first,. second, third and sixth, as to the character of the relation which Miller bore to Reames in the cultivation of his farm, whether as tenant or mere employee. We incline to think that he was a mere hireling, to be paid in kind

and had no right to give a lien upon the crop which belonged to Reames until the third part was delivered to Miller in payment for his labor. Upon this subject see *Huff* v. *Watkins, ante* 82.

But for the purposes of the case let us assume that Miller was a "cultivator of the soil" in the sense of the act of 1878, and had such an interest in the crop to be produced by his labor, assisted by the stock and lands of Reames, as to enable him in advance to subject it to a legal lien; and it does not follow, even in this view, that the plaintiff had the right to recover from Reames the $40 *in money* which he advanced to Miller, and for which he had only his agricultural lien. Upon this assumption what were the relative rights of the parties? If Miller was an independent cultivator of the soil, so as to be able to make the lien, it must have been as tenant, and, if so, Reames was his landlord. The soil, of which Miller was the cultivator, and the stock used in the cultivation, belonged to Reames, and in reason and justice the amount due for such use and occupation was as much an advance for agricultural purposes as any supplies that could be furnished him.

Section 5 of the act of 1878, *supra*, under which plaintiff took his lien, provides as follows: "That the above section shall be subject to the provisions of the following sections of the act. That each landlord leasing lands for agricultural purposes shall have a prior and preferred lien for rent to the extent of one-third of all crops raised on his lands, and enforceable in the same manner as liens for advances, which said lien shall be valid without recording or filing." So that in this view, Reames having leased the land to Miller, had a preferred statutory lien to the extent at least of *one-third of the crop.*

As to the remainder of his share of the crop and advances, he had no lien, as he had not filed an agreement in the office of the register or clerk, but that was still a debt which Miller owed Reames and which he chose to pay by transferring to him the whole of the cotton made on his place.

Did Reames, by receiving and selling the cotton and applying the proceeds to the balance of his debt, not secured by registered lien, make himself legally responsible to pay plaintiff's claim? We think not. He was certainly not liable under the proceed-

ing provided by the agricultural lien law. He was not a party either to the agreement or the process issued under it. The statute declared the lien and furnished the machinery to enforce it, viz., affidavit and warrant in the hands of the sheriff to seize the crop itself, wherever found, but not the proceeds received from the sale of the crop. The warrant was issued and failed to secure any part of the crop, and this proceeding was instituted to have efficacy given to that statutory lien by an ordinary action based upon it.

The view, as we understand it, is that the lien given was a right, which the defective machinery of the statute failed to give the means of enforcing, and the Court of Common Pleas will supply the deficiency by way of supplement to the statute—that the lien declared will be considered in the nature of a chattel mortgage to secure an ordinary debt, and, upon the principle that there should be a remedy for every right, the court should give the remedy to enforce it applicable to such a mortgage. As the right of the plaintiff did not exist at common law, but was entirely the creature of statute, the court cannot supply the remedy and go beyond that afforded by the statute. "It is the general rule that if an affirmative statute, *which is introductive of a new law*, direct a thing to be done in a particular manner, that thing shall not, even although there are no negative words, be done in any other manner." 9 *Bac. Ab., tit. "Stat.," letter G*, and authorities; *McLaughlin* v. *R. R. Co.*, 5 *Rich.* 598; *Sternberger* v. *McSween*, 14 *S. C.* 35.

The last case cited was very much like this, and it is not necessary to do more than refer to it. The action was to recover *the value of a bale of cotton* sold to the defendant by one Morris, upon which plaintiff claimed to have an agricultural lien. Judge McIver, in delivering the opinion of the court, said: "One who attempts to enforce his rights under a lien, which is the creature of a statute, must confine himself to the remedy furnished by the statute. The right derived is solely from the statute, and the remedy resorted to must be that furnished by the statute. The attempt to invest an agricultural lien with the qualities of a chattel mortgage, is an attempt to interpolate into the statute provisions which the legislature has not seen fit to adopt, for,

certainly, if that body had designed to give an agricultural lien the qualities of a chattel mortgage, it would have been very easy to have said so. On the contrary, however, the agreement provided for by the statute, which creates the lien, lacks one of the qualities of a chattel mortgage, which has been held (*Green* v. *Jacobs,* 5 *S. C.* 283,) to be essential to invest the mortgagee with the right to the possession of the property, in that it does not contemplate any provision whatever for the transfer of title; and, as we have seen, the remedy provided by the statute manifestly contemplates no change in the title, but, on the other hand, pre-supposes the continuance of the title in the lienor, subject, however, to the lien, until it is transferred by the execution of the process of the law; just as in the case of property covered by the lien of a judgment or execution, the title of the property remains in the judgment debtor until it is transferred by a sale under process of law, and one who purchases from the judgment debtor takes subject to the lien, which follows the property into whosoever hands it may go; but the purchaser, after he has disposed of it, cannot be made liable for the value of the property or for the proceeds of its sale. *Paysinger* v. *Shumpard,* 1 *Bail.* 237."

Besides, if the civil remedy were not limited to that given by the act, and the lien were enforceable according to the terms in which it is declared, we do not see that Reames—a *bona fide* creditor of Miller—in receiving the cotton from his debtor and applying the proceeds to his debt, committed such a conversion of *plaintiff's property* as would support either an action of trover, or, waiving the tort, for money had and received as upon an *assumpsit,* express or implied. "To sustain trover the plaintiff must show a legal title; he must have property, general or special, or actual possession, or the right to immediate possession at the time of the conversion." *Cooley on Torts* 443, and cases there cited.

The judgment of this court is that the judgment of the Circuit Court be reversed.

SIMPSON, C. J., and McIVER, A. J., concurred.